NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0990n.06

Case No. 12-5791

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 19, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| *v.* | ) ) | COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| KAY & KAY CONTRACTING, LLC and MW BUILDERS, INC., | ) ) ) | |
| Defendants-Appellees. | ) ) | |

_____

BEFORE:  BATCHELDER, Chief Judge; COOK and O'MALLEY,[*] Circuit Judges.

**ALICE M. BATCHELDER**, **Chief Judge.**  Liberty Mutual Fire Insurance Co. ("Liberty Mutual") appeals an order of the district court granting summary judgment to Kay and Kay Contracting, LLC ("Kay and Kay") and MW Builders, Inc. ("MW Builders").  The threshold issue in this case is whether, under Kentucky law, a subcontractor's allegedly faulty preparation of a building pad that results in subsequent settling and structural damages to the building constructed thereon constitutes an "occurrence" within the meaning of the standard coverage language in a commercial general liability ("CGL") insurance policy.  For the reasons explained below, we conclude that the facts of this case do not constitute an "occurrence."  Accordingly, we REVERSE the judgment of the district court and remand with instructions to enter judgment for Liberty Mutual.

---

[*]The Honorable Kathleen M. O'Malley, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

## I.

This case arises out of a CGL insurance policy[1] issued by Liberty Mutual to Kay and Kay as the named insured and including MW Builders as an additional insured. Wal-Mart contracted with MW Builders as a general contractor to build a new Wal-Mart store in Morehead, Kentucky. MW Builders in turn subcontracted with Kay and Kay to perform site preparation work and construct the building pad for the new store.[2]

After Kay and Kay had completed the building pad and the building had been erected, Wal-Mart notified MW Builders that there were cracks in the building's walls. Wal-Mart alleged that the "fill area" underneath the front left corner of the building had experienced settling, and that this settling had caused certain structural problems and resultant damage to the building. Wal-Mart demanded that MW Builders remedy these problems and resultant damage, and MW Builders then demanded that Kay and Kay remedy these issues and indemnify MW Builders from Wal-Mart's claim. Kay and Kay denied liability and demanded coverage from Liberty Mutual under its CGL policy. MW Builders and Kay and Kay eventually reached an agreement and executed a new and separate contract under which Kay and Kay agreed to perform the remedial work demanded by Wal-Mart in exchange for additional consideration.[3]

---

[1]There were actually two policies issued during back-to-back years (2007 and 2008). The relevant operative language in each of these policies is identical. For simplicity's sake, we refer to "the policy" in the singular throughout this opinion.

[2]Kay and Kay clarifies that its duties entailed "primarily fill work, moving dirt and rock," and did not include "footers, foundation, and actual construction work," which was performed by other subcontractors.

[3]Apparently, Kay and Kay has filed an action in state court against MW Builders and Wal-Mart, claiming payment for amounts allegedly owed to Kay and Kay under both the initial subcontract and the subsequent agreement to perform the remedial work. According to Kay and Kay, MW Builders has counterclaimed in that suit, alleging, *inter alia*, negligence. Kay and Kay states that Liberty Mutual is currently providing a defense and indemnity to Kay and Kay

The CGL policy at issue here is the standard ISO (Insurance Services Office, Inc.) policy containing the standard coverage language. Specifically, the policy provides: "This insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' . . . ." The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define the term "accident."

Liberty Mutual filed a complaint seeking declaratory relief against MW Builders and Kay and Kay (jointly "the contractors"), alleging that the contractors' claims for a defense and indemnity were not covered under the CGL policy. Liberty Mutual alleged that there was no "occurrence" under the policy, that there was no "property damage" falling within the policy's coverage, and that one or more exclusions under the policy might apply to preclude coverage.

Eventually, the parties agreed to file cross-motions for summary judgment on the limited threshold issue of "whether there was an 'occurrence' as defined in the underlying policy," and the district court entered an order to this effect. After the parties had filed their respective motions, responses, and replies, and after the district court had held a hearing, the court issued an order denying Liberty Mutual's motion for summary judgment and granting the contractors' motions for summary judgment. The district court also issued a final judgment dismissing Liberty Mutual's complaint with prejudice.

---

in that suit under a reservation of its rights.

Liberty Mutual thereafter filed a motion to partially alter, amend, or vacate the district court's order and judgment. Liberty Mutual made two requests in this motion, asking the district court to:

> (1) reinstate the action in order to allow the parties to litigate the remaining issues that the Court and the parties had agreed to reserve for further proceedings; and (2) apply the Court's holding regarding the "occurrence" issue only to Defendant Kay and Kay Contracting, LLC ("Kay & Kay"), vacate the summary judgment in favor of Defendant MW Builders, Inc. ("MW") and enter summary judgment for Liberty Mutual against MW.

The district court denied the motion, finding that Liberty Mutual had not satisfied any of the grounds for amending a judgment. Liberty Mutual now appeals.

## II.

As our jurisdiction in this case rests on the diversity of the parties, we apply the substantive law of Kentucky, while employing the federal standard for summary judgment. *See McBride v. Acuity*, 510 F. App'x 451, 452 (6th Cir. 2013). We review the district court's grant of summary judgment to Kay and Kay and to MW Builders *de novo*, and we also review the district court's denial of summary judgment to Liberty Mutual *de novo*, because it was "made on purely legal grounds." *See Am. & Foreign Ins. Co., Inc. v. Sequatchie Concrete Servs., Inc.*, 441 F.3d 341, 344 (6th Cir. 2006). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When reviewing cross-motions for summary judgment, we must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

-4-

The threshold issue in this case is whether there was an "occurrence" within the meaning of the CGL policy. Under Kentucky law, "the proper interpretation of insurance contracts generally is a matter of law to be decided by a court." *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010). Furthermore, the Supreme Court of Kentucky has explained that the term "accident" in a standard CGL policy should be given its ordinary and plain meaning, if it is not ambiguous, because it has not been otherwise defined in the standard CGL policy or "acquired a technical meaning in the realm of insurance law." *Id.* at 73–74.

Because the Supreme Court of Kentucky has not addressed the specific issue confronting us, we are faced with the unenviable task of attempting to predict how that court would rule under these circumstances. *See Westfield Ins. Co.*, 336 F.3d at 506. Based upon our reading of the Supreme Court of Kentucky's opinion in *Cincinnati Insurance*, we offer as our best guess that the Kentucky high court would hold that there was no "accident" or "occurrence" on the facts of this case. Accordingly, because we hold that the district court should have granted summary judgment to Liberty Mutual on this basis, we do not reach other issues and arguments made by the parties.[4]

---

[4]However, we do note the confusion below regarding the procedural implications of the district court's summary judgment ruling. Upon the parties' agreement and joint motion, the district court entered an order directing the parties to file cross-motions for summary judgment on the issue of "whether there was an 'occurrence' as defined in the underlying policy." Of course, simply because there is an "occurrence" within the meaning of a policy's coverage language, it does not necessarily follow that the insured is entitled to coverage. For example, in this case, Liberty Mutual alleged in its original complaint not only that (1) there was no "occurrence" under the policy, but also that (2) there was no "property damage" falling within the policy's scope of coverage, and (3) one or more specific policy exclusions might apply to preclude coverage under the policy. Thus, even if there were an "occurrence" under the policy in this case, the issues of property damage and potential exclusions would still have to be addressed before final judgment would be appropriate.

The contractors argue that Liberty Mutual made a policy exclusion argument during the summary judgment proceedings. However, this allegation is simply incorrect. Nowhere in any of its written or oral arguments throughout the summary judgment proceedings did Liberty Mutual argue issues relating either to property damage or to the exclusions it had specifically pled in its complaint. Liberty Mutual's arguments were directed solely towards the occurrence issue. Therefore, the contractors' argument that Liberty Mutual's raising of an exclusion-related issue justified the district court in proceeding to enter final judgment is misguided.

In *Cincinnati Insurance*, the Supreme Court of Kentucky addressed as an issue of first impression "whether faulty construction-related workmanship, standing alone, qualifies as an 'occurrence' under a CGL policy." *Cincinnati Ins. Co.*, 306 S.W.3d at 72. After noting that the question was a difficult one, on which the courts of numerous other states had reached differing conclusions, the Supreme Court of Kentucky adopted what it said appeared to be the majority viewpoint, viz., "that claims of faulty workmanship, standing alone, are not 'occurrences' under CGL policies." *Id.* at 73. Although the factual scenario presented in this case is slightly different from that presented in *Cincinnati Insurance*, we believe that the rationale of the Supreme Court of Kentucky in *Cincinnati Insurance* indicates that the claims presented in this case do not constitute an "occurrence" under a CGL policy.

The facts in *Cincinnati Insurance* involved a homebuilder who contracted with a couple to build the couple a house. The homebuilder allegedly performed faulty and defective work in the construction of the home. *Id.* at 71. The homebuilder was insured under a CGL policy while constructing the house, *id.*, and the relevant language and definitions in that CGL policy were identical to those in the CGL policy in this case, *see id.* at 72.[5] Specifically, the policy in *Cincinnati Insurance* defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* (internal quotation marks omitted). The policy did not define the term "accident." *Id.*

---

[5]Presumably, this is because the policy in *Cincinnati Insurance* was a standard ISO CGL policy, as is the policy in this case.

After noting that the terms "accident" and "occurrence" were not ambiguous, at least under the facts of that case, the court proceeded to discuss the plain meaning of "accident." *Id.* at 73–74. According to the Supreme Court of Kentucky, "[i]nherent in the plain meaning of 'accident' is the doctrine of fortuity. Indeed, the fortuity principle is central to the notion of what constitutes insurance." *Id.* at 74 (internal quotation marks and edits omitted). The court defined fortuity as consisting of "two central aspects: intent . . . and control." *Id.*

Initially, the court recognized the important point that a loss or harm cannot be fortuitous if intended by the insured. *Id.* However, the court also noted that this should not be the end of the analysis, because it is highly unlikely that a contractor would ever intend to produce faulty workmanship. *Id.* Thus, if the analysis simply began and ended with the concept of intent, such that any unintentional faulty workmanship qualified as an "accident," "insurance policies would become performance bonds or guarantees because any claim of poor workmanship would fall within the policy's definition of an accidental occurrence so long as there was not proof that the policyholder intentionally engaged in faulty workmanship." *Id.* at 75. Instead of swallowing this *reductio*, the Supreme Court of Kentucky chose to

> agree with the Supreme Court of South Carolina that refusing to find that faulty workmanship, standing alone, constitutes an "occurrence" under a CGL policy "ensures that ultimate liability falls to the one who performed the negligent work . . . instead of the insurance carrier. It will also encourage contractors to choose their subcontractors more carefully instead of having to seek indemnification from the subcontractors after their work fails to meet the requirements of the contract."

*Id.* (quoting *L-J, Inc. v. Bituminous Fire and Marine Ins. Co.*, 621 S.E.2d 33, 37 (S.C. 2005)).

The court concluded:

> [F]ocusing solely upon whether [the homebuilder] intended to build a faulty house is insufficient. Rather, a court must also focus upon whether the building of the . . . house was a chance event beyond the control of the insured. Or, in other words, a court must bear in mind that a fortuitous event is one that is beyond the power of any human being to bring to pass, or is within the control of third persons. It is abundantly clear, therefore, that the issue of control is encompassed in the fortuity doctrine.

*Id.* at 76 (footnotes, internal quotation marks, and edits omitted).

The court reasoned that because the homebuilder in that case "had control over the construction of the . . . home, either directly or through the subcontractors it chose," it could not be said "that the allegedly substandard construction of the . . . home by [the homebuilder] was a fortuitous, truly accidental, event." *Id.* Thus, the court held that the homebuilder's alleged faulty workmanship was not an accidental occurrence under the CGL policy. *Id.*

In a final footnote (footnote 45) at the very end of its analysis, the Supreme Court of Kentucky stated the following:

> It appears as if a general rule exists whereby a CGL policy would apply if the faulty workmanship caused bodily injury or property damage to something other than the insured's allegedly faulty work product. [9A *Couch on Insurance Third Edition* § 129:4 (2009).] ("In other words, although a commercial general liability policy does not provide coverage for faulty workmanship that damages only the resulting work product, the policy does provide coverage if the faulty workmanship causes bodily injury or property damage to something other than the insured's work product."). Thus, as we construe it, application of the general rule could lead to coverage if, for example, the . . . allegedly improperly constructed home damaged another's property. However, we need not definitively decide in this case whether we should adopt this general rule, as the facts do not present a claim that would fall within it.

*Id.* at 80 n.45. Thus, although the Supreme Court of Kentucky has clearly held that faulty workmanship generally is not an "accident" within the meaning of a CGL policy, it has not "definitively decide[d]" whether allegedly faulty workmanship that causes damage to other property

constitutes an "accident" under a CGL policy. *Id.* Here, the contractors argue that the damage in this case was not to the insured's (Kay and Kay's) allegedly defective work product itself (the building pad), but was rather collateral damage to other property (the building), the work of third-party subcontractors. The contractors contend that under these circumstances, the Supreme Court of Kentucky would conclude there was indeed an "occurrence."

We believe that even if the Supreme Court of Kentucky would adopt the "general rule" mentioned in footnote 45 of its opinion in *Cincinnati Insurance*, it would likely not adopt a version of that rule that would apply to the specific facts of this case. We reach this conclusion by carefully examining the court's reasoning in *Cincinnati Insurance*.

As noted above, the court clearly emphasized the significance of *control* in analyzing the question of fortuity. Here, the damages that occurred were within the control of Kay and Kay. Admittedly, there may be situations where the faulty work of a subcontractor causes damage to other property that is part of a larger work project and over which the subcontractor cannot fairly be said to have any sort of control. However, that is not the case here. The entire reason Kay and Kay was hired to perform the site preparation and building pad work was so that a stable building could be constructed on the pad site. Kay and Kay was hired precisely to prevent the settling and resultant structural damage that occurred in this case. In other words, the possibility of the type of damage in this case was exactly what Kay and Kay was hired to *control*. We do not think that specific damage to a broad work project that is allegedly caused by the defective workmanship of a subcontractor hired to *control against*, or to prevent, that very damage from happening falls within the scope of "fortuity," as the Supreme Court of Kentucky has explained that concept.

In its summary judgment order, the district court relied significantly upon *Global Gear & Machine Co. v. Capitol Indemnity Corp.*, No. 5:07-CV-00184-R, 2010 WL 3341464 (W.D. Ky. Aug. 23, 2010), and both of the contractors rely upon *Global Gear* in their respective briefs on appeal. However, even assuming that the Supreme Court of Kentucky would endorse the analysis in *Global Gear*, we believe that the facts of that case are materially distinguishable from the facts in this case. In *Global Gear*, a boat management company hired Global Gear & Machine Co., Inc. ("Global Gear") to perform maintenance and repair work on various vessels. *Id.* at *1. Global Gear allegedly performed defective repair work on the gear boxes of several vessels, *id.*, which allegedly damaged not only the gear boxes, but also other parts of the vessels, *id.* at *2, *4. Reasoning that "Global Gear was only in control of the parts of the vessels it was hired to repair, *i.e.*, the gear boxes," the court held that the damage to other parts of the vessels besides the gear boxes constituted an "occurrence" under a CGL policy. *Id.* at *4.

It is certainly plausible to hold that when a repair service comes to existing property to work on only a certain aspect of that property, unintentional damage to other aspects of the property caused by the repair service's defective workmanship qualifies as "fortuitous" and therefore an "accident." However, this is distinctly different from holding that when a subcontractor is hired to prepare a proper building pad for a new building, any settling and resulting structural damages to the building allegedly caused by the subcontractor's defective workmanship also qualify as somehow "fortuitous" or an "accident." While the former holding may be consistent with the opinion in *Cincinnati Insurance* (a question we need not address), we do not believe that the latter is. The damage in *Global Gear* may have resulted from an occurrence because Global Gear lacked

sufficient control over the damaged parts of the vessels to negate the notions of "fortuity" and "accident," but the nature and extent of Kay and Kay's control over what happened in this case is materially different from the situation in *Global Gear*.

"Simply put, faulty workmanship is not an accident." *Cincinnati Ins. Co.*, 306 S.W.3d at 76 (internal quotation marks and edits omitted). Based upon the reasoning of the Supreme Court of Kentucky in *Cincinnati Insurance*, we doubt that court would adopt a rule under which the facts of this case would constitute an "accident." Even were the court to adopt some form of the "general rule" contemplated in footnote 45 of its *Cincinnati Insurance* opinion, it is not clear that the scope of the rule the court would actually adopt would be broad enough to encompass the specific factual situation presented here, where Kay and Kay did not damage property that was already in existence and for which it had no direct concern as it was performing its own duties under the subcontract. Rather, the fact that Kay and Kay was hired for the express purpose of preparing a pad site for the pending construction of a building thereon, coupled with the alleged fact that Kay and Kay's faulty workmanship produced a defective pad site that resulted in settling as well as cracking in the building's walls, indicates to us that what happened here was not a "fortuity," as the Supreme Court of Kentucky has defined and explained that term. Therefore, under Kentucky law, we believe that the facts of this case do not present an "accident" that would trigger coverage as an "occurrence" under the CGL policy issued by Liberty Mutual.

## III.

For the foregoing reasons, we **REVERSE** the judgment of the district court and **remand** with instructions to grant judgment for Liberty Mutual.