HOOVER MOTOR EXP. CO., INC. *v.* CLEMENTS PAPER CO.

(*Nashville*, December Term, 1950.)

Opinion filed July 27, 1951.

Petition to Rehear denied August 31, 1951.

BASS, BERRY & SIMS and JUDSON HARWOOD, all of Nashville, for complainant.

LEVINE & LEVINE and HENRY C. FOUTCH, all of Nashville, for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

On November 19, 1949 Hoover Motor Express Company, Inc. made and delivered to Clements Paper Company a written offer with reference to the purchase of certain real estate. There was no consideration paid for the offer. On January 20, 1950 Clements Paper Company made a written acceptance of that offer. Hoover refused to go forward with the transaction and Clements Paper Company brought suit for specific performance or, in the alternative, for damages. Hoover defended on the ground that it had withdrawn the offer before its acceptance. The Chancellor and the Court of Appeals concurred in sustaining the bill of Clements Paper Company and ordered a reference to the master for ascertainment of damages. The controversy was then presented to this Court by Hoover's petition for certiorari wherein it is insisted (1) that there is no concurrent finding on the controlling fact question; hence, that the evidence on that question may be reviewed de novo by this Court, and (2) that, assuming a concurrent finding on that question of fact, such finding is contrary under the law applicable to all the material evidence upon the question. The writ was granted and oral argument had.

■■ All are agreed that in order to convert into a contract an offer for which no consideration was paid there must be an acceptance of that offer before it is withdrawn. The Chancellor found that Clements had shown by a preponderance of the evidence that Hoover had breached "the written contract entered into by and be-

tween the parties''. Implicit in such conclusion is the finding that Hoover had not withdrawn the offer before its acceptance. The Court of Appeals expressly found that the offer had not been withdrawn before acceptance. There was, therefore, a concurrent finding of the two Courts upon that controlling question of fact.

■■ If there is any material evidence to sustain the above stated concurrent finding of fact then this Court is bound thereby not only as to that finding but as well to an inference or conclusion reasonably drawn from the evidence that it is a fact. *Conaway* v. *New York Life Ins. Co.,* 171 Tenn. 290, 295, 102 S. W. (2d) 66. Therefore, since we cannot consider the case de novo, we must look to the evidence most favorable to Clements and determine from it whether there is therein any material evidence in support of this concurrent finding or any testimony that reasonably supports an inference or conclusion that the offer had not been withdrawn before its acceptance on January 20.

Clements was represented in this transaction by its Vice-President, Mr. Williams. He wrote the letter of January 20, 1950 accepting the offer. It is not contended in behalf of Clements that there was any acceptance prior to that date. Williams closes that letter with this statement: ''We are ready to comply with our part of this agreement and are calling on you to do the same.'' The statement just quoted suggests the thought that its author, Mr. Williams, realized at the time he wrote the letter that something previously had occurred which caused him to anticipate that Hoover might not ''comply'' by going forward with its prior offer, Mr. Williams' letter of acceptance notwithstanding. This is important in that it throws light upon the construction placed by

Williams upon a phone conversation had on January 13, 1950 by him with Hoover.

Williams had been authorized by Clements Paper Company some time in December to accept the written offer made by Hoover on November 19. It would, therefore, have been a simple matter for him then to have written the letter of acceptance which he finally wrote on January 20. The record leaves no doubt of the fact that Williams intended to accept the offer provided he could not get from Hoover a substantially better trade that he, Williams, had in mind. He, therefore, withheld acceptance and undertook on several occasions to get in touch with Hoover for the purpose of procuring, if he could, that better trade. Fortunately for Williams, insofar as the keeping alive of the offer is concerned, he never got around to conveying to Hoover the changes or additions he had in mind. But he did take a step to that end on January 13, 1950 by phoning Hoover with the idea of promoting his proposition. It is upon the legal effect that must be given that phone conversation, *as testified to by Williams*, that the outcome of this case must depend. If it can be given a construction which reasonably supports the concurrent finding mentioned that construction must be given.

Mr. Williams testified that he got Mr. Hoover on the phone on January 13 and ''told him that we were ready to go through with it and I would like to discuss it with him''. The matter which he testifies that he wanted to discuss with Mr. Hoover was whether Hoover would permit Clements to retain an easement for certain purposes through the property which Hoover had offered to buy.

Williams testifies that in reply to Williams' statement that he, Williams, wanted to discuss the offer with Hoover

that Hoover replied "Well, I don't know if we are ready. We have not decided, we might not want to go through with it".

Williams made several other statements in his testimony as to what Hoover said in this phone conversation. The following are quotations from Williams' testimony: "He said he thought they might not go through with it."

"Q. After you had talked to him on January 13, on the telephone, that is Mr. Eph Hoover, Jr., he indicated to you that he had made other plans or in some way 'indicated' to you that the company had made other plans? A. Yes."

. . . . .

"Q. You had been told that they had made other plans? A. No, I had not been told. He said that he didn't think they were going through with the proposal and that he would call me on January 17."

(Hoover did not call Williams after the January 13 phone conversation.)

. . . . .

"A. That they had other plans in mind and he would let me know. He was not sure if he was going through with the original proposition.

"Q. Did he definitely refuse to positively commit himself on January 13 that he would go through with it? A. That is right."

. . . . .

"It was a very short discussion. Frankly, I was very much shocked when I heard from him that they didn't plan to go through with it. I had made my plans and had gone to the extent of having this elevation made."

The interpretation which Mr. Williams placed upon what Hoover said to him in the phone conversation of

12

January 13 is stated in Clements' bill of complaint as follows: "This was the first information, suggestion or intimation that complainant had received that the defendant would not or might not carry out its agreement or offer."

■ Our problem is reduced to answering the question as to whether there can reasonably be placed upon the above quoted testimony of Williams a construction that prevents the statement of Hoover, as testified to by Williams, from amounting to a withdrawal on January 13 of the offer before it was attempted on January 20 to accept it. This is true because "the continued existence of the offer until acceptance is, however, necessary to make possible the formation of the contract." 12 American Jurisprudence, page 531.

■ Although there is no Tennessee case deciding the point, insofar as we can find, the general rule is that express notice, in so many words, of withdrawal before acceptance of an offer of the character we have here is not required. In 55 American Jurisprudence, page 488, under a discussion of "Termination of Offer", there appears in the text, supported by reference to decisions, this statement: "It is sufficient to constitute a withdrawal that knowledge of acts by the offerer inconsistent with the continuance of the offer is brought home to the offeree."

The same principle is declared to be the law in the text of 17 Corpus Juris Secundum, Contracts, Section 50, page 398 in this language: "it being sufficient that the person making the offer does some act inconsistent with it, as, for example, selling the property, and that the person to whom the offer was made has knowledge of such act."

Re-statement of the Law of Contracts, Section 41, page 49, has this to say: "Revocation of an offer may be made by a communication from the offeror received by the offeree, which states or implies that the offeror no longer intends to enter into the proposed contract, if the communication is received by the offeree before he has exercised his power of creating a contract by acceptance of the offer."

Re-statement of the Law of Agency, Section 88 expresses it thus: "Conduct manifesting to the agent or the principal that the third person no longer consents to the transaction constitutes a withdrawal."

In *Coleman* v. *Applegarth,* 68 Md. 21, 11 A. 284, 287, quoting with approval from the English case of *Dickinson* v. *Dodds,* L. R. 2 Ch. Div. 463, it is said: "That being the state of things, it is said that the only mode in which Dodds could assert that freedom (freedom from the offer) was by actually and distinctly saying to Dickinson, 'Now I withdraw my offer.' It appears to me that there is neither principle nor authority for the proposition that there must be an express and actual withdrawal of the offer, or what is called a retraction. It must, to constitute a contract, appear that the two minds were as one, at the same moment of time; that there was an offer continuing up to the time of the acceptance. If there was not such a continuing offer, then the acceptance comes to nothing."

Applying to the undisputed testimony as furnished by Williams the rule clearly stated in all the authorities from which we have above quoted—and we find none to the contrary—we think it must be concluded that Hoover's written offer of November 19 was withdrawn on January 13 thereafter prior to its attempted acceptance on Janu-

ary 20, and that the concurrent finding of the Chancellor and the Court of Appeals to the contrary is not supported by any material evidence. There can be no doubt as to it being a fact that on January 13 knowledge was brought home to Williams that Hoover no longer consented to the transaction. There was, therefore, no offer continuing up to the time of the attempted acceptance on January 20.

We have been greatly concerned over the fact that the above stated conclusion which we have felt compelled to reach is contrary to the concurrent findings of two very able Courts and we have long pondered the question presented. It is our feeling that the disagreement between our Court and these Courts is due to the fact that the Chancellor and the Court of Appeals and counsel for Clements Paper Company mistakenly failed to give effect to the general rule that express notice, in so many words, of withdrawal of an offer of the character we have here is not required. Apparently, insofar as a close search reveals, our Courts of Tennessee have not heretofore been presented a case in which that rule was applicable.

The decree of the Court of Appeals and of the Chancellor will be reversed and the cause remanded for entry of a decree in keeping with this opinion. All costs in all Courts will be adjudged against Clements Paper Company.

All concur.