**GENERAL MOTORS CORPORATION, Movant,**

v.

**Rosetta HERALD, Kentucky Farm Bureau Mutual Insurance Company, Turner–Graham Chevrolet–Buick, Inc., Respondents.**

No. 90–SC–936–DG.

Supreme Court of Kentucky.

May 14, 1992.

Rehearing Denied Aug. 27, 1992.

Frank P. Doheny, Jr., Will H. Fulton, David T. Schaefer, Woodward, Hobson & Fulton, Louisville, Kristi K. Fielder, General Motors Corp., Detroit, Mich., Buford A. Short, General Delivery, Beattyville, for movant.

William J. Gallion, Gallion, Baker & Bray, P.S.C., Lexington, Wade Lynn Rasner, Co. Atty., Booneville, J. Brent Austin, Austin & Ward, Lexington, for Rosetta Herald.

Michael A. Stidham, Co. Atty., Jackson, Hershel Branson, Jr., City Atty., Jackson, for respondent Kentucky Farm Bureau Mut. Ins. Co.

J. Douglas Graham, Campton, for Turner–Graham Chevrolet–Buick.

DAVID F. BRODERICK, Special Justice.

This case was accepted for discretionary review by an order entered on April 3, 1991, by this Court.

This case stems from a product liability action filed in the Lee Circuit Court, by Rosetta Herald against the General Motors Corporation (hereinafter "General Motors").[1]

Rosetta Herald was injured on June 30, 1984, in a single vehicle accident which occurred when she was driving a 1984 Chevrolet Camaro manufactured by General Motors. She lost her right arm in the accident.

This case came on for trial before the Lee Circuit Court on July 5, 1989. On the morning of trial Rosetta Herald's attorneys filed a motion for continuance alleging that a dispute had arisen and as to whether the case had been settled.

It was the contention of Rosetta Herald, on the morning of trial, that a $500,000.00 settlement offer had been made by General Motors with the provision that this offer would remain open until the start of trial. The offer was accepted and then General Motors contended it had already withdrawn the offer.

Rosetta Herald was represented by three attorneys, Wade Rasner, Brent Austin and

1. Turner Graham–Chevrolet–Buick, Inc., was the dealership which sold the 1984 Camaro which Rosetta Herald was driving at the time of the accident. It was also named as a party.

Kentucky Farm Bureau Insurance Company intervened to recover no fault benefits. Neither of the claims of these two parties are pertinent to this appeal.

William Gallion. General Motors was represented by attorneys Will Fulton, Lin West and Buford Short. In addition, General Motors used Howard Smith, an individual who had direct contact with plaintiff's counsel during many of the settlement negotiations. Smith is not an attorney but was an employee of Donald Fisher & Associates, Inc., a business that handles structured settlements.

General Motors argues that its offer had been withdrawn prior to its acceptance.

The history of negotiations in this case was that on June 26, 1989, a meeting was held to discuss settlement. The meeting was attended by Rosetta Herald and her attorneys, William Gallion and Brent Austin. Attorney Lin West and Howard Smith attended on behalf of General Motors. A significantly important fact is that prior to this meeting, by faxed correspondence Rosetta Herald's attorneys had designated Mr. Gallion as their sole negotiator. At the meeting, Howard Smith indicated that he would be the sole negotiator for General Motors.

During the June 26, 1989, meeting Howard Smith made an initial offer of $300,000.00 on behalf of General Motors to settle all pending claims, including the claim of Kentucky Farm Bureau.

It was Rosetta Herald's contention before the trial court that counsel Gallion then made a counteroffer of $900,000.00. The settlement negotiations and what occurred thereafter were disputed between the parties.

On the morning of the trial an evidentiary hearing was held at the insistence of General Motors before the Lee Circuit Court. The purpose of the hearing was to determine whether a settlement had been reached and, if so, whether it was enforceable. These proceedings all emanated from the motion filed by Rosetta Herald. However, the impetus to hold a hearing was at least with the agreement and instance of General Motors.

During the two day evidentiary hearing the Court heard the following witnesses: William Gallion, J. Brent Austin, Rosetta Herald, Dana Cooder (sister of the plaintiff), Howard Smith, Lin W. West, Christie Fielder, and Buford A. Short. The Court found after hearing these witnesses, that as a matter of fact, a settlement had been reached in the amount of $500,000.00 between Rosetta Herald and General Motors. A specific finding was made that General Motors' $500,000.00 settlement offer was in full force and effect as of 1:00 a.m. on July 1, 1989, and that the offer had not been withdrawn. The Court further found that attorney Gallion, the designated negotiator for Rosetta Herald, had accepted the $500,000.00 offer prior to any withdrawal by General Motors when he spoke to Smith by telephone on July 3, 1989.

The trial judge then at the conclusion of the evidentiary hearing entered an order adjudicating that a settlement had been reached by the parties in the amount of $500,000.00 to be paid to Rosetta Herald from General Motors. A memorandum opinion was entered setting forth these findings of fact.

General Motors filed motions based upon the Kentucky Rules of Civil Procedure 59.07 and 52.02. Thereafter, consideration of the motions was given by the Court and an order was entered on September 5, 1989, overruling all such motions stemming from the July 27, 1989, order of the Lee Circuit Court. General Motors appealed from the judgment and subsequent orders to the Kentucky Court of Appeals, which affirmed the judgment of the Lee Circuit Court by order entered the 2nd day of November, 1991. General Motors filed a motion for discretionary review, which was granted.

The issues before us require two considerations: (1) whether a settlement offer was made by General Motors, and, (2) whether that offer was accepted.

General Motors argues that the Court's finding that its settlement offer was accepted by Rosetta Herald on July 3, 1989, is in error. Its real quarrel, however, is with the Court's finding that the offer was not withdrawn by General Motors on July 1, 1989. General Motors contends that the

offer was withdrawn and the trial Court's finding to the contrary is clearly erroneous.

General Motors in its argument points to numerous conflicts in the parties' testimony. It is not this Court's role to resolve that conflict unless the evidence of the Circuit Court is clearly erroneous. The Circuit Court clearly found that the General Motors' offer was not withdrawn. A review of this evidentiary record reveals that there was substantial evidence to support that finding.

In a further extension of its argument about the withdrawal of the $500,000.00 offer, General Motors argues that a statement made by Rosetta Herald's attorney during a colloquy before the Lee Circuit Court prior to the taking of testimony at the evidentiary hearing should be binding upon Rosetta Herald. This was based on multiple theories. However, the trial court made specific findings of fact indicating that a settlement had been reached.

Findings of fact of a trial court will not be set aside unless clearly erroneous. Further, due regard should be given to the opportunity of the trial court to judge the credibility of the witnesses. *Kentucky Rule of Civil Procedure* 52.01.

The trial court's decision is based on its judgment of the credibility of witnesses which it observed firsthand. There exists evidence in the record to support its findings. We will not disturb them on appeal.

■ We have addressed at this stage the two inquiries. The first inquiry is whether or not a settlement offer was made. Based upon our review of the entire record, the trial court findings, briefs, and the oral arguments, it is clear that there is substantial evidence to support the finding that a settlement offer was made and was still open on July 1, 1989.

■ The second inquiry is whether the settlement offer of $500,000.00 was accepted before it was withdrawn. There again, a dispute of fact existed before the trial court. This dispute was resolved against General Motors. This Court in its appellate capacity is bound by the trial court's finding of fact unless there is clear error

committed or unless there is an abuse of discretion by the trial court. *Cox v. Bramblet*, Ky., 492 S.W.2d 188 (1973); *Eviston v. Eviston*, Ky., 507 S.W.2d 153 (1974); *Cherry v. Cherry*, Ky., 634 S.W.2d 423 (1982).

The trial court's decision is based on the Court's judgment as to credibility of witnesses which only it had an opportunity to observe. There exists evidence in the record to support trial findings and we will not disturb them upon appeal.

■ The argument by General Motors involving judicial admissions and comments made by counsel is an additional argument made to support the assertion that there existed no settlement. We agree that admissions made by an attorney should bind a client. We do not however accept General Motors' argument that this Court should adopt the common law rule as set out in *Hoover Motor Express Co. v. Clements Paper Co.*, 193 Tenn. 6, 241 S.W.2d 851 (1951), a Tennessee case. It is our opinion that there does not exist in the *Hoover, supra,* case a strong factual dispute, as is present in the case at bar. At this time we do not choose to adopt the findings in *Hoover, supra.* This case is simply one where the trial court was presented with sharply conflicting accounts of a sequence of events, and based upon its own experience and observations made findings of fact, upon which judgment was entered.

Based upon the above, we conclude that the opinion of the Court of Appeals should be affirmed, which opinion affirmed the Lee Circuit Court.

COMBS, LAMBERT, SPAIN and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents with a separate opinion in which STEPHENS, C.J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent. My reasons are as follows.

1) First, and foremost, I am seriously disturbed by the lack of professional integrity plainly displayed when one contrasts the statement made on the record by respondent's counsel *before* the settlement

hearing and the sworn testimony from the same person given *after* the hearing commenced. Before the hearing, Mr. Austin stated:

"Mr. Smith did indeed call my office and attempt to withdraw the offer on Saturday...."

During the hearing Mr. Austin testified:

"[M]y understanding was that they were considering withdrawing the offer...."

The testimony from the General Motors (G.M.) negotiator, Mr. Smith, was unequivocal that the offer was withdrawn. Without engaging in a technical discussion as to whether Mr. Austin's first statement regarding this matter represented a "judicial admission," certainly the state of the record is such that the trial court's decision on this point should be reversed as clearly erroneous.

2) A new era of negotiation has arrived, the era of "designated negotiators," useful (perhaps) as a negotiating device in complex cases, but hardly a legal reason to deny the authority of any of Rosetta Herald's legal representatives to communicate on her behalf. Attorneys-at-law are by definition agents authorized to speak for or communicate with on behalf of their clients. Here, if the only attorney representing Ms. Herald legally authorized to take a message on her behalf was to be Mr. Gallion, certainly the law must require something more than an arrangement of convenience.

We are asked to buy the concept that, having been notified by Ms. Herald's attorneys that Attorney Gallion would be the one to conduct the negotiations, G.M. was legally prevented from communicating to Attorney Austin further offers or advising Attorney Austin of the withdrawal of an offer. If there is some legal reason why the designation of Mr. Gallion as the person to conduct the negotiations deprived Mr. Austin of status or authority as Ms. Herald's attorney, it has yet to surface.

To make matters worse, when contacted by G.M.'s negotiator who wished to communicate withdrawal of a $500,000 offer, apparently Mr. Austin injected himself into the negotiation, with or without authority, by suggesting that the parties should "split the difference" between Mr. Gallion's last offer and G.M.'s last offer. Surely in these circumstances we cannot conclude some legal barrier prevented G.M. from communicating with Mr. Austin.

3) Too much emphasis has been put on the fact question as to whether G.M.'s last offer of $500,000 was actually withdrawn or whether this was just being considered, and not enough on the legal question whether the offer was rejected by the making of a counteroffer. A counteroffer has the effect of rejecting an opponent's offer unless a contrary understanding is clearly displayed by the context of the negotiations. *Restatement (Second) of Contracts*, § 39(2):

"An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree."

Here, after G.M. made its $500,000 offer, both Mr. Gallion and then Mr. Austin made counteroffers, and there is little of substance, if anything, to support a finding that G.M. specified its $500,000 offer would remain open in the face of a counteroffer, or to support a finding that G.M.'s offer was not legally rejected when counteroffers were made.

Any one of the three reasons stated above suffices to reverse the finding of the trial court that a binding settlement occurred. Collectively, they should compel a reversal.

STEPHENS, C.J., joins this dissent.