NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0478n.06

Case Nos. 14-5900/5947

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JNJ LOGISTICS, LLC, | ) | **FILED** |
| | ) | Jun 30, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| and | ) | |
| | ) | ON APPEAL FROM THE |
| SEARS LOGISTICS SERVICES, INC., | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| Intervening Plaintiff-Appellant, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: GIBBONS and COOK, Circuit Judges; MURPHY, District Judge.[*]

JULIA SMITH GIBBONS, Circuit Judge. This appeal turns on a single issue: whether the designation of "Sears, 3456 Meyers, Memphis, TN 38108" as an additional insured under a policy held by JNJ Logistics, LLC extended coverage to Sears Logistics Services, Inc. ("SLS"). The district court concluded as a matter of law that it did not and granted summary judgment to Scottsdale Insurance Company. Because the insurance policy contains a latent ambiguity and there is a genuine issue of material fact about whether the parties intended SLS to be an additional insured, we reverse the district court's grant of summary judgment to Scottsdale and remand for further proceedings.

---

[*] The Honorable Stephen J. Murphy III, United States District Judge for the Eastern District of Michigan.

I.

JNJ Logistics, LLC ("JNJ") provides hostling services—drivers, tractors, and related equipment for moving trailers at warehouses—to corporate customers in Tennessee and Mississippi. One of JNJ's customers was Sears Logistics Services, Inc., which warehouses and distributes goods sold in Sears, Roebuck and Company retail stores. In its contracts with SLS, JNJ agreed to procure and maintain commercial general liability insurance that named SLS as an additional insured. Pursuant to that contractual obligation, JNJ purchased an insurance policy from Scottsdale Insurance Company ("Scottsdale") that was first effective on May 9, 2000. Scottsdale acknowledges that JNJ's 2000 policy named SLS as an additional insured. It was renewed on January 1, 2001 for one year and again on January 1, 2002 for another year.

On January 1, 2003, Scottsdale issued what it characterizes as a "new" policy to JNJ under a different policy number, although the first page of the 2003 policy states that it is a renewal of JNJ's original policy that dated back to 2000. Under the 2003 policy, JNJ was charged a $200 premium for two additional insureds, but the policy did not spell out who those additional insureds were.

The 2003 policy was renewed on January 1, 2004. Enclosed in the policy renewal documentation transmitted from the Southern General Agency of Tennessee to Scottsdale was a list of JNJ's locations as of December 16, 2003. Included on the list were "Sears—3456 Myers [sic], Memphis, TN," and "Sears SLS—10425 Ridgewood Dr., Olive Branch, MS." According to Scottsdale, this list was provided by JNJ. Like the 2003 policy, the 2004 policy included a $200 premium for two additional insureds; unlike the 2003 policy, it named the additional insureds, one of which was listed simply as "Sears, 3456 Meyers, Memphis, TN 38108." 3456

Meyers[1] is the location of a warehouse owned, operated, and managed by SLS. The facility is under the sole custody and control of SLS, and other than SLS no entity with "Sears" in its name operates at 3456 Meyers in Memphis. Furthermore, no business called simply "Sears" has ever operated at 3456 Meyers. John Ennis, Sr., the sole member of JNJ Logistics, LLC, says that his understanding was that SLS had been added to JNJ's policy as an additional insured.

On July 20, 2004, a man named Darius Grove was allegedly struck by a forklift driven by an SLS employee at SLS's facility at 10425 Ridgewood Drive, Olive Branch, Mississippi. Grove was an employee of JNJ Express, Inc.; JNJ Express is a separate entity from JNJ Logistics, although Ennis is also the president of JNJ Express. Grove sued SLS, but not JNJ, in Mississippi state court. SLS then filed a third-party complaint against JNJ for contractual and common-law indemnity. Grove settled his claims against SLS in 2011 and the case was dismissed, but SLS's third-party claims against JNJ were expressly preserved.

On November 29, 2004, more than four months after Grove's injury, JNJ's policy was amended to add "SLS, Inc." as an additional insured, in exchange for an additional premium of $102.50. Scottsdale maintains that this amendment was made at JNJ's request, and in support of this assertion offers an email exchange between Barkley Insurance and the Southern General Agency of Tennessee, which indicates that Barkley Insurance asked that SLS be added to JNJ's policy and that the Southern General Agency did so after confirming with Barkley Insurance what interest SLS had in JNJ. Ennis says that he did not ask to add "SLS, Inc." as an additional insured and has no idea why that amendment was made.

---

[1] The other record documents are inconsistent in referring to this address either as "3456 Meyers Road" or "3456 Meyers Avenue." Whether 3456 Meyers sits on a "Road" or "Avenue" is immaterial to the parties' arguments, so we will simply sidestep this inconsistency and refer to 3456 Meyers.

SLS and JNJ tendered claims to Scottsdale for coverage relating to Grove's injury but Scottsdale denied them on the basis that SLS was not an additional insured at the time of Grove's injury. In September 2010, JNJ brought a declaratory judgment and breach of contract action against Scottsdale in Tennessee state court, arguing that "Sears, 3456 Meyers" referred to SLS, that the policy provided coverage to SLS at its Ridgewood location as well (where Grove had been injured), and that Scottsdale had wrongfully rejected coverage. Scottsdale removed the case to federal court on the basis of diversity jurisdiction.[2] SLS filed an amended intervening complaint in February 2011, joining JNJ in arguing that Scottsdale wrongfully denied coverage to SLS.

During summer 2012 the parties filed cross-motions for summary judgment. On November 19, 2012, the district court denied JNJ's and SLS's motions for summary judgment and granted Scottsdale's motion for summary judgment on the issue of Scottsdale's denial of coverage to SLS. The district court held that "as a matter of law, SLS is not an additional insured under the JNJ-Scottsdale policy." Essential to this ruling was the district court's conclusion that "'Sears' is a different corporate entity from 'Sears Logistic [sic] Services.'"

The central issue remaining for trial, which is not the subject of this appeal, was whether Scottsdale breached its contract with JNJ by refusing to provide a defense to JNJ in SLS's third-party action on the common-law indemnity claims. After a bench trial, the district court ruled in favor of JNJ on that issue. Final judgment was entered on July 10, 2014.

---

[2] JNJ filed an amended complaint in January 2011 that added a claim for violation of Tennessee's bad faith statute, Tenn. Code Ann. § 56-7-105. That claim was resolved by the parties during the pendency of this appeal.

JNJ and SLS timely appealed. Focusing solely on the issue of whether SLS was an additional insured, they challenge the district court's decision denying their motions for summary judgment and granting Scottsdale's motion for summary judgment.

II.

We review *de novo* the district court's order granting summary judgment to Scottsdale. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015). Our review of the district court's order denying summary judgment to JNJ and SLS is also *de novo* because the district court framed its decision as having been "made on purely legal grounds." *Liberty Mut. Fire Ins. Co. v. Kay & Kay Contracting, LLC*, 545 F. App'x 488, 491 (6th Cir. 2013) (quoting *Am. & Foreign Ins. Co., Inc., v. Sequatchie Concrete Servs., Inc.*, 441 F.3d 341, 344 (6th Cir. 2006)).

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this assessment we view the record and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is improper if the nonmoving party has produced evidence "such that a reasonable jury could return a verdict" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

In determining whether a genuine dispute of material fact exists, we will apply the substantive law of the state of Tennessee for the following reasons. To determine the applicable substantive law in a diversity-jurisdiction case, federal courts apply the choice-of-law rules of the forum state: here, Tennessee. *Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 704 (6th Cir.

2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Tennessee's choice-of-law rules provide that claims based on a contract are presumed to be governed by the law of the jurisdiction in which the contract was executed, absent contrary indications such as a contractual choice-of-law clause. *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645 (6th Cir. 2013) (citing *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999)). The claims in this case are based on the insurance policy issued by Scottsdale's agent, which was executed in Tennessee and does not contain a choice-of-law clause. This points us to Tennessee's substantive law. The district court applied Tennessee's substantive law and the parties did not object; we will do so as well.

III.

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002) (citing *Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190 (Tenn. 1973)). The first step in ascertaining the parties' intent is to look at the plain meaning of the words in the contract and determine whether the language is ambiguous. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) (citing *Planters Gin*, 78 S.W.3d at 890). "If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute." *Id.* "If, however, the words in a contract are susceptible to more than one reasonable interpretation," *i.e.*, if the language is ambiguous even after applying the pertinent rules of construction, then the court may consult parol evidence, "including the contracting parties' conduct and statements regarding the disputed provision," in order to ascertain the parties' intent. *Id.* at 611–12. Ambiguity does not arise merely because the parties interpret contractual provisions differently; "[a] contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Johnson v. Johnson*,

37 S.W.3d 892, 896 (Tenn. 2001) (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)).

There are two types of ambiguities that may arise in a contract: patent and latent. *See Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 915 (Tenn. Ct. App. 1994) (citing *Union Planters Corp. v. Harwell*, 578 S.W.2d 87, 92 (Tenn. Ct. App. 1978)). The distinction between the two has been characterized as "ambiguous terms" versus "ambiguous facts." *Id.* "A patent ambiguity is one produced by the uncertainty, contradictoriness, or deficiency of the language of an instrument . . . ." *Teague v. Sowder*, 114 S.W. 484, 488 (Tenn. 1908) (quoting *Weatherhead v. Sewell*, 28 Tenn. 272, 295 (Tenn. 1848)). By contrast, a latent ambiguity arises not "from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer." *Id.* (internal quotation marks omitted). Unlike a patent ambiguity, which is apparent on the face of the document, a latent ambiguity arises "when the document's terms are applied or executed." *Horadam v. Stewart*, 2008 WL 4491744, at *6 (Tenn. Ct. App. 2008) (quoting Black's Law Dictionary 88 (8th ed. 2004)).

The additional insured endorsement at issue here did not contain a *patent* ambiguity. As the district court noted, the plain language of the policy is quite clear that "Sears, 3456 Meyers" is an additional insured. But when the time comes to figure out who or what "Sears, 3456 Meyers" is, a *latent* ambiguity arises from extrinsic facts: no entity with the legal name "Sears" operates or has ever operated at 3456 Meyers in Memphis. What is more, there is apparently no entity in either Tennessee or Mississippi known solely by the legal name "Sears." Rather, 3456 Meyers is under the sole custody and control of Sears Logistics Services, Inc., which is a distributor for and wholly owned subsidiary of Sears, Roebuck and Company, which in turn is a wholly owned subsidiary of Sears Holdings Corporation. The term "Sears,

3456 Meyers" thus is subject to several different reasonable interpretations: it might refer to Sears Logistics Services, Inc.; Sears, Roebuck and Company; Sears Holdings Corporation; or perhaps some other entity with "Sears" in its name. That is not to say that all of these interpretations are equally likely, but they are sufficiently plausible to make the additional insured designation ambiguous.

Deciding whether resolution of a contractual ambiguity presents a question of law or question of fact can be a thorny problem; different jurisdictions have taken different approaches at different times depending on the type of contract at issue. *See generally* Randall H. Warner, *All Mixed Up About Contract: When Is Contract Interpretation a Legal Question and When Is It a Fact Question?*, 5 Va. L. & Bus. Rev. 81 (2010). Tennessee's approach, however, is that when ambiguity remains after the court applies the pertinent rules of construction, the "legal meaning of the contract become[s] a question of fact." *Planters Gin*, 78 S.W.3d at 890 (internal quotation marks and alterations omitted); *see also Gredig*, 891 S.W.2d at 915 (citing *Harwell*, 578 S.W.2d at 92) (holding that resolution of a latent ambiguity in an insurance contract—whether or not Harwell, who was on leave at the time of the acts complained of, was an "employee" in the ordinary sense of the word—presented a question of fact for resolution by the jury).

In this case, both sides have produced evidence such that a reasonable jury could resolve this factual dispute in their favor. JNJ and SLS, for their part, have presented evidence that could allow a reasonable jury to conclude that "Sears, 3456 Meyers" made SLS an additional insured. As discussed above, JNJ had a contractual obligation to secure insurance coverage for SLS, and Scottsdale admits that SLS was an additional insured under JNJ's policy until January 1, 2003. SLS was the only business with "Sears" in its name with which JNJ did business. JNJ and SLS have introduced evidence showing that the facility at 3456 Meyers is and was under the sole

control of SLS and that no other entity with "Sears" in its name has ever operated at that location. Furthermore, a fax sent from JNJ to Barkley Insurance and the Southern General Agency (Scottsdale's agents) in 2000 states that JNJ operated at "Sears Logistics Services" at 3456 Meyers, which could be construed by a reasonable jury to mean that Scottsdale had actual knowledge that the "Sears" doing business at 3456 Meyers was SLS. JNJ also points out that the additional insured endorsement that names "Sears, 3456 Meyers" insured the "organization" listed, but the term "organization" is not defined in the policy. Ruth Crocker, an underwriter at Southern General Agency, testified in a deposition that the 3456 Meyers address did not designate a location where work was being performed but merely "a mailing address to deliver the additional insured endorsement to." JNJ argues that it therefore expected not only that SLS was covered, but that SLS was covered for its operations at the Ridgewood location (where Grove was injured) as well as the Meyers location. JNJ also points to a document entitled "Detail Loss Information for Selected Policy," prepared by Scottsdale after JNJ's and SLS's claims were filed, which lists one of the claimants as "Sears (SLS Logistics)" at the location of 3456 Meyers in Memphis. Taken together, this evidence raises a genuine issue of material fact about whether the parties intended "Sears, 3456 Meyers" to extend coverage to SLS.

In Tennessee, as in other jurisdictions, the general rule of long standing is that "in construing an insurance policy, uncertainties or ambiguities must be construed strongly against the insurer and in favor of the insured." *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 366 (Tenn. 1973). Notwithstanding this background rule, we think Scottsdale has also raised a genuine issue of material fact that precludes entry of summary judgment in favor of JNJ and SLS. Scottsdale points out that the list of locations submitted with JNJ's 2003 policy renewal listed "Sears" at the 3456 Meyers location, but "Sears SLS" at the 10425 Ridgewood

location.  Scottsdale asserts that this list was provided by JNJ.  The record does not allow us to assess definitively whether this assertion is true, but if it is, it tends to show that JNJ viewed "Sears" at 3456 Meyers as a different entity from SLS.  Scottsdale further points out that JNJ's policy was amended in November 2004—months after Grove's injury—to add "SLS, Inc." as an additional insured, and that when JNJ's policy was renewed on January 1, 2005, it included *three* additional insureds: "SLS, Inc." at 10425 Ridgewood Drive in Olive Branch, "Sears" at 3456 Meyers in Memphis, and "Coors Brewery" at 5151 Raines Road in Memphis.  These facts also could be read by a reasonable jury to suggest that the parties viewed "Sears, 3456 Meyers" as a different entity from SLS.

The ultimate touchstone is the intent of the parties, *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005), and in these muddled circumstances, ascertaining who the parties intended to cover with the additional insured designation for "Sears, 3456 Meyers" is a question for the finder of fact.  Summary judgment was improper.

IV.

We reverse the district court's grant of summary judgment to Scottsdale and remand for further proceedings.