BOGGS, Circuit Judge.
Worx Environmental Products hired Maverick Group Marketing to market its hand cleaner to Wal-Mart. After Maverick pitched the product to Wal-Mart for several years, making significant progress, but without signing a deal, Worx 'fired Maverick. Worx then completed a sale of the cleaner to Wal-Mart and refused to pay Maverick a commission. Maverick sued for breach of contract in Tennessee and Worx removed the case to the United States District Court for the Western District of Tennessee. After a four-day bench *303 trial, the district court ruled in favor of Worx, We affirm.
Maverick argues that Worx had no right to terminate their working relationship based on the “MANA Code of Ethics,” located on the signature page of the marketing contract, but below the signatures. The district court rejected this argument on summary judgment, and we review that decision de novo. See Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc., 409 F.3d 342, 346 (6th Cir. 2005). MANA stands for the Manufacturers’ Agents National Association, and its Code of Ethics provides principles for professional and effective business partnerships. Maverick directs our attention to the following provisions of the Code that appear toward the middle of the appended language:
2. To be accorded the Agent by the Manufacturer:
□ Enter into a fair and clearly worded written agreement with the Manufacturers’ Agent;
□ Make the agreement cancellable either party during its first year on suitable advance written notice, but subsequently only for failure of either party to comply with its terms, or by mutual consent; by
According to Maverick, the language after the second checkbox in the above-quoted passage prevents Worx from terminating the contract after it has been in effect for more than one year.
We disagree. The formatting of the contract shows that the parties did not intend for the MANA Code of Ethics to be legally binding. The Code is printed in a rectangular box on the signature page below the signature lines, separate from the eleven numbered paragraphs that make up the •body of the contract. It is separately numbered, printed in smaller text than the paragraphs, and contains checkboxes, which are not checked, to the left of each provision.
In addition, several of the Code’s provisions are clearly aspirational. One provision states that the agent should “[conscientiously cover the territory assigned,” and another states that the manufacturer should “[ajgree to practical and dignified means for friendly arbitration.” The Code also states that a third-party agent should “[cjooperate to enhance the professional relationship of the Manufacturers’ Agent and his Principal,” even though the relationship between Maverick and Worx did not involve a third-party agent. In fact, the specific provision of the Code that Maverick invokes is written in the form of an aspirational statement. It is phrased as a suggestion for how a manufacturer should “[mjake the agreement,” and does not contain legally binding language such as “shah.”
Contrast that with Paragraph Six of the contract, which describes the process for contract termination and uses the word “shall” several times:
This Agreement shall continue in full force and effect until the date (“Termination Date”) set forth in a notice given by one party to the other indicating such party’s election to terminate this Agreement, which Termination Date shall be at least one hundred twenty (120) days after the date notice of such election is given. Alternately, this Agreement may be terminated at any time by mutual written agreement between both parties hereto.
R. 59-4 at 4. Paragraph Six says nothing about the contract being perpetual after it has been in effect for more than one year and appeal’s to contradict the provision of the MANA Code of Ethics cited by Maverick, providing further evidence that the Code’s aspirational language was not *304 meant to be legally binding. Paragraph Six does not reference the Code, and in fact, none of the paragraphs in the contract above the signature lines mentions the Code. If the parties had wanted the MANA Code of Ethics to be legally binding, they could have said so in Paragraph Six—or anywhere in the body of the contract—but they declined to do so. In our view, Paragraph Six provides the proper procedure for terminating the contract, and Code provision that Maverick cites is not legally binding. The district court was correct to grant summary judgment on this issue.
Maverick’s next argument is that it is entitled to a commission from sales to Wal-Mart based on the following language in Paragraph Six:
If this Agreement shall terminate for any reason whatsoever, Agent shall be entitled to receive his full fees determined in accordance with provisions of Paragraph Four with respect to orders solicited prior to the effective date of such termination, regardless of when such orders are accepted by Principal (provided Agent can demonstrate such orders were solicited prior to the effective date of such termination) and regardless of when such shipments are made or invoices rendered.
Maverick argues that it solicited an order from Wal-Mart before the termination date—July 8, 2009—and is therefore entitled to a commission. The district court ruled at the summary-judgment stage that the meaning of “orders solicited” was ambiguous and conducted a four-day bench trial. After hearing the testimony of numerous witnesses, the court found as a fact that an “order” is “solicited” in the special case of Wal-Mart only after five events occur: (1) the manufacturer must have obtained a supplier agreement; (2) there must have been product testing; (3) the manufacturer must have reached an agreement with Wal-Mart on pricing; (4) an item number must have been issued by Wal-Mart; and (5) Wal-Mart must have placed an order. The first three events occurred before the termination date, but Wal-Mart did not issue an item number and place.its first order until late July, several weeks after the termination date. As a result, the court concluded that Worx did not have to pay Maverick a commission.
Determining the appropriate standard of review is complicated. As we have previously noted,- “whether resolution of a contractual ambiguity presents a question of law or question of fact can be a thorny problem.” JNJ Logistics, LLC v. Scottsdale Ins. Co., 617 Fed.Appx. 464, 469 (6th Cir. 2015) (citing Randall H. Warner, All Mixed Up About Contract: When is Contract Interpretation a Legal Question and When Is It a Fact Question?, 5 Va. L. & Bus. Rev. 81 (2010)).In Tennessee, when a contract is ambiguous, “a court applies established rules of construction to determine the parties’ intent.” Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002). If ambiguity remains after the court has applied the pertinent rules of construction, “the legal meaning of the contract” becomes “a question of fact.” Ibid, (quoting Smith v. Seaboard Coast Line R.R. Co., 639 F.2d 1235, 1239 (5th Cir. 1981)).
Following the Planters Gin framework, the district court ruled at the summary-judgment stage that the contract was ambiguous after applying the pertinent rules of construction and proceeded to trial for a resolution of “disputed facts.” Whether the contract is ambiguous is a legal question, which we review de novo, but the proper resolution of that ambiguity is a factual question. See Planters Gin, 78 S.W.3d at 885. Under the Federal Rules of Civil Pro *305 cedure, which apply in this diversity-jurisdiction case, Fed. R. Civ. P. 81(c)(1), we must not disturb the district court’s factual findings unless they are clearly erroneous, Fed. R. Civ. P. 52(a)(6).
The standard of review is dispositive in this case. As we see it, the meaning of “orders solicited” in Paragraph Six is ambiguous, and the district court’s resolution of that ambiguity was not clearly erroneous. Maverick notes that the meaning of “solicit” is “to approach with a request or plea (as in selling or begging).” Webster’s Third New International Dictionary 2169 (1986). We acknowledge that Maverick solicited Wal-Mart for business, but as Worx points out, Paragraph Six provides a commission for “orders solicited prior to the effective date of ... termination.” Thus, the question is not whether Maverick engaged in any conduct that could be characterized as soliciting, but whether Maverick solicited an order from Wal-Mart prior to the termination date.
The words “orders solicited” can reasonably be read as describing a scenario in which Wal-Mart has affirmatively committed to buying products from Worx. Without such a commitment, Wal-Mart could simply walk away from the negotiating table without having placed an order, and in that situation, it would be natural to conclude that no “orders” were “solicited” by Maverick prior to the termination date. To put it simply, it makes sense to say that there can be no “orders solicited” unless Wal-Mart has actually placed an order. That did not occur in this case, at least, not before the termination date. Although Worx negotiated a selling price with Wal-Mart before the termination date, Wal-Mart did not order any products from Worx until July 31, 2009, several weeks after the termination date on July 8.
The contract does contemplate that an “order” can be “solicited” by Maverick before it is “accepted” by Worx, but that observation does not contradict the district court’s interpretation. If Wal-Mart made an offer to buy a certain number of products at a certain price, Worx would have been free to accept or reject that offer. See Safeco Ins. Co. of Am. v. City of White Home, 36 F.3d 540, 546 (6th Cir. 1994) (“For an agreement to be enforced as a contract, there must be mutual assent; one party must accept the other party’s offer.”); Hoover Motor Express Co. v. Clements Paper Co., 193 Tenn. 6, 241 S.W.2d 851, 852 (1951) (“[I]n order to convert into a contract an offer for which no consideration was paid there must be an acceptance of that offer before it is withdrawn.”). As long as Wal-Mart made an offer before the termination date, Maverick would be entitled to a commission even if Worx accepted the offer after the termination date. Thus, there remains a meaningful distinction between solicitation and acceptance under the district court’s interpretation of the contract.
Admittedly, this interpretation is not particularly favorable to Maverick, as it allows Worx to terminate the contract before receiving an offer from Wal-Mart without paying a dime to Maverick. But given the ambiguous terms of the contract, it is unclear where else the line between developing a relationship and soliciting an order should be drawn, Maverick’s argument leaves a host of questions unanswered: Does merely placing a phone call to Wal-Mart constitute the solicitation of an order? If so, how quickly must an order be placed for Maverick to earn a commission? What if Wal-Mart initially declined to place an order, but then placed an order five 'years after the initial sales pitch— what then? Although the district court’s interpretation is not favorable to Maverick, it provides a coherent and sensible reading of Paragraph Six of the contract.
*306 If Maverick had wanted greater protection against the possibility of termination, it could have negotiated a better contract before agreeing to represent Worx. The President and founder of Maverick, John Garrison, testified that he had previously done business with Wal-Mart, and he was therefore familiar with the complex process of marketing a product to Wal-Mart. Garrison could have asked for an up-front retainer fee or reimbursement of certain expenses, but instead, he decided to represent Worx in exchange for only the prospect of commissions from orders solicited. That decision left him vulnerable to the possibility that Worx would terminate their relationship without compensation after coming under new management, and that is exactly what happened in this case. By all accounts, Maverick spent considerable time and treasure navigating the intensely competitive process of marketing a product to one of the world’s largest retailers. By denying Maverick the fruits of its labor when it was close to reaching a deal with Wal-Mart, Worx acted unfairly, to say the least. Unfortunately for Maverick, the district court did not clearly err in its factual finding that the contract’s ambiguous terms do not provide the relief that Maverick seeks. The district court’s judgment is AFFIRMED.