RENDERED: AUGUST 29, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1047-MR

ROBERT THOMAS                          APPELLANT

                 APPEAL FROM CAMPBELL CIRCUIT COURT
v.           HONORABLE JULIE REINHARDT WARD, JUDGE
               ACTION NOS. 23-CI-00164 & 23-CI-00290

STEVEN TOWNSEND,
ADMINISTRATOR OF THE ESTATE
OF BETTY JO THOMAS                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, EASTON, AND LAMBERT, JUDGES.

EASTON, JUDGE: Robert Thomas ("Robert") appeals from an Order of the

Campbell Circuit Court which directed payment of insurance proceeds received in

a settlement of a personal injury claim, a wrongful death claim, and a loss of

consortium ("LOC") claim. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Robert was the husband of Betty Jo Thomas ("Betty Jo"). On the night of April 7, 2022, Betty Jo went out drinking with a friend, Mark J. Webber, II ("Webber"). They drank together at Barrett's Pour House ("Pour House"). They left together with Webber operating his motorcycle and Betty Jo as his passenger. Webber wrecked the motorcycle and then fled the scene leaving Betty Jo trapped with the motorcycle. Betty Jo did not survive. She was forty-seven when she died.

Betty Jo did not leave a will. In addition to Robert, Betty Jo left three adult children: Steven Townsend ("Steven"), Raven Caudill, and Shelby Thomas. Robert is Shelby Thomas's father. After a battle between Robert and Steven, the Campbell District Court appointed Steven as the administrator of the estate.

Steven filed suit alleging personal injury suffered by Betty Jo as well as wrongful death. Webber and Pour House were named as defendants. Webber was eventually convicted of manslaughter and sentenced to prison for Betty Jo's death. The claim against Pour House was for dram shop liability for providing too much alcohol to Webber. The Complaint sought compensatory and punitive damages.

Webber was uninsured as was the title owner of the motorcycle. There was a policy of uninsured motorist coverage providing coverage for Betty Jo in the amount of $50,000. Robert secured payment of that policy for himself. We

are not certain of the authority for that settlement with the insurance company, considering that Robert was not the administrator of the estate. In any event, the order appealed does not address that issue. It instead deals with the liability policy providing coverage for Pour House in the amount of $1,000,000.

Robert made a claim for LOC. Robert had become paralyzed after his own motorcycle accident in July of 2021. He claims Betty Jo provided constant care for him because of this. He believes his LOC is of much greater value than the other claims.

Steven could not file a suit for Robert to assert a loss of consortium claim. They could have cooperated in the filing of one suit with two plaintiffs, but they did not have to. Robert could file a separate suit, which would be consolidated with Steven's suit, or he could intervene. He did both. When he intervened, Robert specifically told the circuit court that the purpose of the intervention would be to apportion insurance proceeds.[1]

Once all the necessary parties were in the suit, a mediation was conducted. All claimants agreed to accept Pour House's policy limits of $1,000,000 for a release of all claims.[2] Unfortunately, the claimants could not

---

[1] Record at 25.

[2] Robert acknowledged that the claims against Pour House had been settled. Paragraph 17 of Exchange of Information. Record at 168.

agree on how to split the proceeds among them. The terms of the written settlement then became important. Pour House's insurance company promised to issue checks to the claimants as soon as a determination had been made on the distribution of the funds "by Court Order or by Agreement."[3]

By declaratory judgment, the circuit court rejected Robert's argument that his LOC claim had to be evaluated by a jury trial before allocating the insurance proceeds. The circuit court ordered that Robert would receive one-half of the proceeds, with the other half going to the three children. Robert appeals. We will develop further facts as may be necessary for our discussion.

## STANDARD OF REVIEW

The circuit court made a legal determination as part of a declaration of rights as to how the insurance proceeds should be allocated. We review conclusions of law de novo. *Sparks v. Rose*, 681 S.W.3d 542, 547 (Ky. App. 2023).

## ANALYSIS

This case turns on whether Robert had a right to insist on a jury trial before settlement proceeds were disbursed. If not, the question becomes whether the circuit court erred in ordering how the proceeds were divided.

---

[3] Record at 249. The circuit court had the authority to specifically enforce the settlement agreement. *See General Motors Corp. v. Herald*, 833 S.W.2d 804 (Ky. 1992).

Robert did not demand a jury trial in his Intervening Complaint, instead referring to "the trier of fact"[4] which may be the court or a jury. Robert demanded a jury trial only *after* the settlement was reached with the only solvent defendant.[5] Robert insists he was entitled to rely on Steven's demand for a jury trial, which of course was pertaining to the defendants, not Robert. Certainly, the claimants had a right to a jury trial against the defendants, had they not settled those claims. Ultimately, we need not determine if some circumstances could call for a jury trial before distribution of settlement proceeds, because in this case Robert agreed to a disposition by the court.

Betty Jo's claim for personal injury and suffering prior to her death survived her death, and Steven had the authority to make that claim with the wrongful death claim. KRS[6] 411.133. The damages recovered in such cases do not become part of the estate. They go directly to the heirs identified by statute with potential deductions for burial and other specified expenses. KRS 411.130(2). In this case, the proceeds would be paid one-half to Robert and one-half to the three children. KRS 411.130(2)(b).

---

[4] Record at 61.

[5] Motion for Jury Trial filed on January 16, 2024. Record at 174.

[6] Kentucky Revised Statutes.

Robert's LOC claim is authorized by KRS 411.145. An LOC claim derives from the injury or death of the spouse and so it depends on there being such a claim, but it is also independent as its own claim. The personal injury and wrongful death claim are "superior" to the LOC claim. *Cheatwood v. Kentucky Farm Bureau Mutual Insurance Company*, 654 S.W.3d 720, 723 (Ky. App. 2022). The difference between the superior claim and the LOC claim becomes pronounced in the context of insurance coverage.

Insurance policies often have limitations of coverage of so much "per person" and so much "per accident." With respect to an LOC claim, its dependent nature means that it is part of the "per person" limit. *Moore v. State Farm Mutual Insurance Company*, 710 S.W.2d 225, 226 (Ky. 1986). *See also Daley v. Reed*, 87 S.W.3d 247 (Ky. 2002). The damages claimed for personal injury, wrongful death, and LOC all arise from the injury to one person, in this case Betty Jo.

Now we get to the direct question of how to distribute insurance proceeds when all claimants can show that their individual claim may exceed the available insurance coverage. Robert presented evidence that his damages are more than $1,000,000. Steven could similarly show that the personal injury claim and wrongful death claims could easily exceed $1,000,000. In addition to earning *capacity* (not actual earnings) which is the measure for a wrongful death claim, the

-6-

suffering perhaps for hours by the abandoned Betty Jo prior to her death could justify a significant award. Punitive damages also could have been substantial.[7]

We and the circuit court are guided by *Johnson v. Basil as next Friend of Johnson*, 584 S.W.3d 777 (Ky. App. 2019). Although this case is factually distinguishable, the general rules of law applied in *Johnson* have equal application to the present case. *Johnson* involved parental consortium. Children and spouses are both potential LOC claimants and are both recipients of wrongful death proceeds.

First, *Johnson* stands for the proposition that it is proper to resolve the question of distribution of limited insurance proceeds by declaratory judgment. *Id.* at 780. More to the point, this Court in *Johnson* held that when insurance proceeds are shown to be insufficient, which both sides claim in the present case, then "the claims of loss of consortium are merely an item of damage recoverable for the wrongful death . . . . Consequently, all recoverable damages must be distributed in accord with the requirements of KRS 411.130." *Id.* at 783. The circuit court in the present case ordered $500,000 paid to Robert and the other $500,000 paid to the three children.

---

[7] The record does not contain the insurance policy for Pour House. It may have excluded punitive damages. Even so, the claims for personal injury and wrongful death could have justified large awards as compensatory and punitive damages.

-7-

## CONCLUSION

The personal injury, wrongful death, and LOC claims in this case were substantial. When limited insurance coverage was available and a settlement reached for policy limits, it was proper for the circuit court to determine the distribution of the insurance proceeds by declaratory judgment without a jury trial. The circuit court properly ordered the distribution of the proceeds according to the wrongful death statute. The Campbell Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jacqueline S. Sawyers
Donald L. Nageleisen
Fort Mitchell, Kentucky

BRIEF FOR APPELLEE:

Langdon Ryan Worley
Joshua D. Hicks
Gregory M. Funfsinn
Lexington, Kentucky