RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0475-DG

UNITED STATES LIABILITY                                                        APPELLANT
INSURANCE COMPANY

ON REVIEW FROM COURT OF APPEALS
V.                                    NO. 2018-CA-0475
MCCRACKEN CIRCUIT COURT NO. 09-CI-01400

JACI WATSON, AS ADMINISTRATOR                                                  APPELLEE
OF THE ESTATE OF WILLIAM
GERALD WATSON, DECEASED

**OPINION OF THE COURT BY JUSTICE HUGHES**

**REVERSING AND REMANDING**

After being seriously injured in a motor vehicle accident in late 2008, William G. Watson settled his dram shop liability claim against Pure Country, LLC, an establishment insured by United States Liability Insurance Company (USLI). Pure Country was alleged to have served alcohol to the driver of the car in which Watson was a passenger. Several years after settling with Pure Country, Watson brought a bad faith claim against USLI pursuant to Kentucky's Unfair Claims Settlement Practices Act (UCSPA) only to have it dismissed as barred by the statute of limitations. This appeal requires us to consider the triggering of the limitations period for a UCSPA claim where the parties settle the underlying claim and, in the course of addressing that issue, to reiterate the legal elements of a binding settlement agreement. For the

reasons discussed fully below, we conclude that the Court of Appeals erred in reversing the trial court because a binding settlement agreement between Watson and Pure Country was in fact reached more than five years prior to Watson's filing of his UCSPA action.

**FACTUAL AND PROCEDURAL BACKGROUND**

William Watson and his friend, Joe Taylor, patronized establishments that serve or sell alcohol in the Paducah, Kentucky area the evening of December 26, 2008. Pure Country, LLC, d/b/a Pure Country, insured by USLI, was one of these establishments. Later that evening, Taylor's vehicle left the road and flipped several times, ejecting Watson from the passenger side and causing disabling injuries to his spine and neck. Taylor failed a field sobriety test and his blood alcohol concentration was found to be above the legal limit.

In December 2009,[1] Watson filed suit against Taylor, Pure Country, and Ohio Valley Bistros, Inc., d/b/a TGI Friday's. Watson asserted a negligence claim against Taylor and sued the other defendants under Kentucky's dram shop law, claiming each establishment served Taylor alcoholic beverages when he was visibly intoxicated. Watson initiated a second lawsuit in June 2011 against Roof Brothers Wine and Spirits, Inc., the liquor store Watson and Taylor visited that evening. The trial court consolidated the two lawsuits and the parties conducted discovery regarding the issues of liability, comparative

---

[1] Watson died in December 2019 and the administrator of his estate, Jaci Watson, is now the Appellee in this Court.

2

fault, and Watson's claimed damages. Throughout the case, a dispute existed as to whether Pure Country even served alcoholic beverages to Taylor that night.

Pertinently, in early February 2012, Watson moved for leave to file a second amended complaint to assert bad faith claims against USLI and the other insurance companies (collectively, the "Carriers") involved in the case under common law and the UCSPA, Kentucky Revised Statute (KRS) 304.12-230. Watson's proposed second amended complaint, *inter alia*, alleged that the Carriers "violated KRS 304.12-235 by failing to make a good faith attempt to settle the claim within the time prescribed in KRS 304.12-235(1)" and this conduct further constitutes "bad faith and a breach of fiduciary duty to act in good faith and to deal fairly with Plaintiff." USLI[2] objected to Watson's motion on the ground that Watson could not state viable statutory bad faith claims against it. The circuit court agreed with USLI and denied Watson's motion in an April 17, 2012 order, the basis of its decision being *Wittmer v. Jones*, 864 S.W.2d 855 (Ky. 1993), and *Motorists Mutual Insurance Co. v. Glass*, 996 S.W.2d 437, 452-53 (Ky. 1997). Without evidence sufficient to warrant punitive damages, and without Watson having shown all three bad faith elements outlined in *Wittmer*, the circuit court declined to allow filing of Watson's amended complaint which would add the Carriers as party

---

[2] The Carriers, by special appearance, filed a joint response.

3

defendants and, as a practical matter, result in a continuance of the approaching trial.[3]

According to the record, the first brief settlement negotiations between Watson and Pure Country occurred mid-2011. One year later, upon rejecting an earlier offer from USLI, Watson made a written settlement offer to Pure Country on June 11, 2012, stating the offer would remain open through the close of business on June 19, 2012. Watson agreed to accept USLI's policy limits and further agreed that Watson would be responsible for resolving anticipated medical liens.

The policy covering Pure Country contained a provision under which the policy limits eroded as fees and costs were incurred in defense of the claim. Pure Country's counsel promptly accepted Watson's offer[4] and subsequently transmitted the release and settlement agreement to Watson's counsel on July 20, 2012, noting that he would send a final version of the agreement once the final settlement amount was known, i.e., the funds remaining after deduction of defense fees and costs. On July 30, 2012, Pure Country's counsel forwarded the final settlement release, detailing the amount remaining on the policy, to Watson's counsel. The parties ceased all further litigation of Watson's claims against Pure Country after June 2012; at that time a trial was scheduled for

---

[3] The trial was scheduled to begin August 13, 2012.

[4] A June 13, 2012 email from Watson's counsel referenced a conversation that morning between counsel and reflected that Watson would begin determining the amount owed on various medical liens, for which Watson would be responsible.

4

early August 2012.[5] Meanwhile, as promised in the June 13, 2012 email, Watson's counsel worked to resolve the medical liens that would be covered by the funds Watson was to receive from the negotiated settlement. In December 2012, with those details resolved, Watson executed the release and USLI paid the agreed amount.

As of August 2017, only the claims against Taylor remained in suit. On August 9, 2017, Watson moved for leave to file a tendered third amended complaint to assert a bad faith claim against USLI. The trial court granted the motion, and the complaint was filed of record August 11, 2017.[6] USLI moved on September 13, 2017 to dismiss Watson's third amended complaint for its failure to state a claim against USLI upon which relief could be granted. USLI argued that the third amended complaint did not contain allegations different than the proposed second amended complaint which former Circuit Judge Clymer had not allowed Watson to file in April 2012 and that no developments had occurred to alter the viability of Watson's claims against USLI more than five years later; USLI noted the only change in circumstances was the parties' December 2012 settlement.[7] Hence, USLI maintained that the *Wittmer* bad

---

[5] The trial did not proceed as scheduled and the case was never tried, the parties receiving summary judgment or eventually settling. The final settlement was with Defendant Joe Taylor and was noticed to the trial court by the parties on December 18, 2019.

[6] At times, the parties reference August 11 in their filings. For consistency with the circuit court, we use August 9 when referencing the filing date of the third amended complaint.

[7] As Watson emphasizes, USLI did initially refer to a December 2012 settlement, the month that the release was signed, and the funds were disbursed. However, as

faith cause of action elements were not met. USLI further argued that Watson's bad faith claim was barred by the five-year limitation period in KRS 413.120(2)[8] and that Watson's claims were time-barred to the extent they accrued before August 9, 2012. USLI noted that Watson obviously believed his claim accrued before then since he first attempted to state a bad faith claim against USLI in March 2012.[9]

Watson in response argued, first, that his third amended complaint set forth a plausible claim for relief. He maintained the UCSPA applies and the reasonableness of USLI's conduct in this case is a question for the jury to decide. As for the April 17, 2012 court order, Watson insisted that was not determinative. He asserted that the trial court's concerns at that point – trial delay due to impact on the underlying claims – were no longer present. And as to the extent the trial court made determinations about a lack of evidence, or the weight of it, Watson argued that those determinations were in error. As to timeliness, he contended the third amended complaint was not barred by KRS 413.120(2) because, as USLI concedes, it did not make an actual settlement payment until December 2012, rendering Watson's August 9, 2017 complaint timely. Finally, Watson insisted that the claims asserted against USLI relate back to the filing of the original complaint, an assertion which USLI strongly

explained fully below, a binding settlement agreement was reached no later than July 30, 2012.

[8] The parties agree the five-year limitation period expressed in KRS 413.120(2) applies to this case.

[9] Watson filed the motion in February, briefing occurred in March and the trial court denied the motion in April 2012.

6

disputed, noting that it was not even a named defendant in the original December 2009 complaint – a complaint containing no allegations of bad faith.

On November 14, 2017, the circuit court granted USLI's motion to dismiss in part, finding that the statute of limitations had run on those bad faith claims which existed prior to August 9, 2012. The court also concluded that the third amended complaint did not relate back to the original complaint because the bad faith claim did not arise out of the conduct, transaction, or occurrence set forth in the original complaint and it did not change a party against whom the original complaint was filed. As to the court's April 2012 order, it explained that impending trial reasons for denying the second amended complaint no longer existed and reconsidered its earlier position[10] that under no circumstances could Watson prevail on his bad faith claim.

USLI then moved for summary judgment on Watson's bad faith claims, arguing they were all time-barred. Given the circuit court's conclusion that only conduct that occurred after August 9, 2012 could support a timely bad faith claim, USLI supported its motion with evidence that Watson and USLI agreed to settle Watson's claims against USLI's insured for policy limits in June 2012. USLI argued with that being so, as a matter of law, nothing could have occurred after August 9, 2012 as Watson alleged under KRS 304.12-230 subsections (2), (3), (4), (6), (7) and (14), and KRS 304.12-235, that would constitute bad faith. Watson countered, arguing that the motion was

---

[10] By this point, Judge Clymer had retired and Judge William A. Kitchen, III was the presiding judge.

7

premature; that USLI was on notice of Watson's claims against it in early 2012 with his original motion for leave to amend the complaint and would not be prejudiced in having to defend the case on its merits; that he would be prejudiced by a determination that his claims accruing before August 9, 2012 are time-barred; and that he had an actionable claim under UCSPA until the underlying claim was paid. In support of his argument, he provided proof that USLI did not send the settlement checks dated December 28, 2012 until January 2, 2013. Watson noted further that the claims against Pure Country were not dismissed in the trial court until February 21, 2013.

Watson also filed a competing motion, asking the circuit court to reconsider, clarify, and/or revise its April 17, 2012 and November 14, 2017 orders, thereby rendering USLI's motion for summary judgment moot. Citing *Hill v. State Farm Insurance Co.*, 390 S.W.3d 156 (Ky. App. 2012), he argued in part that since the circuit court had reconsidered its position that he could under no circumstances prevail on his UCSPA claim and that because his initial motion for leave to file an amended complaint was timely in February 2012, the court should reconsider its ruling that "any claim for damages accruing prior to August 9, 2012 is time-barred." USLI's response maintained that Watson's third amended complaint could not possibly relate back to his unsuccessful 2012 motion for leave to file an amended complaint. The circuit court denied Watson's motion to reconsider.

The circuit court granted USLI's motion for summary judgment. Finding the parties did not dispute that Watson agreed in principle in June 2012 to the

8

settlement of the underlying claim against Pure Country for the policy limits of the insurance coverage, the circuit court considered the parties' dispute as to whether the insurance claim ceased to be pendent prior to August 2012.[11] The circuit court concluded that the insurance claim was in fact settled before August 9, 2012, and as Watson could not identify any bad faith actions subsequent to the settlement agreement, a genuine issue of material fact did not exist, entitling USLI to judgment as a matter of law. In accordance with its written order, the circuit court made an oral ruling, finding that the claim settled before August 2012.

Watson appealed to the Court of Appeals from three of the McCracken Circuit Court orders: 1) the April 17, 2012 order denying Watson's motion for leave to file an amended complaint; 2) the November 14, 2017 order granting in part USLI's motion to dismiss; and 3) the February 26, 2018 order granting USLI summary judgment. The Court of Appeals concluded the circuit court did not abuse its discretion in April 2012 by denying Watson's motion for leave to file an amended complaint, agreeing that Watson's bad faith claim against USLI was not ripe. However, based on its understanding of contract formation principles, the Court of Appeals concluded the circuit court's 2017 order granting partial dismissal of Watson's bad faith claim was in error. The Court of Appeals concluded that Watson's bad faith claim did not accrue until

---

[11] The circuit court's order noted that the November 14, 2017 order was based on information that Watson's claim was settled in December 2012.

December 2012, when Watson "accepted" USLI's June 2012 offer and executed the settlement agreement, resulting in USLI paying Watson. Based on the perceived December 2012 settlement date, the Court of Appeals concluded that Watson's August 2017 bad faith claim against USLI was timely and remanded the case for further proceedings.

The Court of Appeals did not address Watson's argument that his bad faith claim in his 2017 complaint was timely because USLI was on notice of the claim from Watson's early 2012 motion for leave to file an amended complaint. Viewing the circuit court's 2018 summary judgment in favor of USLI as not being a final order adjudicating the entire bad faith claim, the Court of Appeals declined to review the circuit court's summary judgment. The Court of Appeals later denied USLI's petition for rehearing. USLI then petitioned for, and this Court granted, discretionary review to consider when a third-party insurance bad faith claim accrues under the UCSPA.

## ANALYSIS

### I. The Trial Court Correctly Concluded That Watson's Bad Faith Claim Against USLI Was Barred by the Statute of Limitations After July 30, 2017

This case centers on the statute of limitations applicable to a third-party insurance bad faith claim pursuant to Kentucky's UCSPA and, more specifically, when that limitations period is triggered where the insurer and the UCSPA plaintiff have reached a settlement as to the insurer's liability on the underlying claim. To answer this question, we first briefly review the fundamentals of a UCSPA claim.

10

"The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is contractually obligated to pay." *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000). KRS 304.12-230 is the UCSPA provision that identifies certain prohibited "acts or omissions" on the part of an insurer, including "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," KRS 304.12-230(6). Since *State Farm Mutual Automobile Insurance Co. v. Reeder*, 763 S.W.2d 116 (Ky. 1988), this Court has recognized that a third-party can bring a statutory claim against the tortfeasor's insurance carrier even though UCSPA does not include a private right of action provision. KRS 446.070 allows a person injured by violation of any Kentucky statute to recover damages from the offending party and thus when read with the UCSPA provision on prohibited conduct provides a statutory bad faith cause of action against an insurer. *See Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 26-27 (Ky. 2017). The statute of limitations period applicable to that claim is five years pursuant to KRS 413.120(2) (statute applicable for "action upon a liability created by statute, when no other time is fixed by the statute creating a liability").

Beginning with *Wittmer*, 864 S.W.2d at 890, this Court has identified the required elements of a bad faith claim as (1) an obligation to pay under the policy; (2) no reasonable basis in law or fact for denying the claim; and (3) knowledge on the part of the insurer that no reasonable basis existed for

11

denying the claim or the insurer's reckless disregard as to whether such basis existed. The first element—obligation to pay—may be the result of a final judgment from a court, *Simpson v. Travelers Ins. Co.*, 812 S.W.2d 510, 512 (Ky. App. 1991), but it may also be the result of settlement of the underlying claim. This case presents us with the first opportunity to address a settlement of an underlying UCSPA claim and the triggering of the five-year statute of limitations.

Here, USLI believed that the role of its insured, Pure Country, in the relevant events on the night of December 26, 2008 was unclear. As noted, Taylor and Watson visited several establishments that night where alcohol was available and significant questions existed as to whether Pure Country actually served alcohol to Taylor, a necessary element of Watson's dram shop liability claim. In the summer of 2012, after Watson's case had been pending for approximately two and one-half years and with a trial scheduled to begin in a few weeks, Watson and Pure Country began serious settlement negotiations. Those negotiations were successful: the parties agreed to settle and at that point—a binding settlement agreement—USLI's obligation to pay under the policy arose. Later, when the timeliness of Watson's UCSPA claim was at issue, the trial court examined the parties' conduct and concluded that a binding settlement occurred no later than July 30, 2012. The Court of Appeals reversed because it dated USLI's binding obligation to pay several months later, in December 2012. Based on the undisputed facts and Kentucky precedent, we find that the trial court was clearly correct, and thus it appropriately

12

dismissed Watson's UCSPA claim filed on August 9, 2017 as barred by the five-year statute of limitations.

Before looking closer at this specific dispute, we pause to emphasize that this case is ultimately about more than the triggering of the statute of limitations for a UCSPA cause of action following settlement of the underlying claim. The trigger in those circumstances is a binding settlement agreement and, to state the obvious, because settlement agreements occur regularly across the breadth of civil litigation their binding nature, their enforceability, is of considerable significance beyond just bad faith insurance cases. Consequently, in a larger sense this case is about what constitutes a binding settlement agreement between adverse litigants, an issue of immense concern to our civil justice system.

As we noted in *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003), "'settlement agreements are a type of contract and therefore are governed by contract law.'" (Citing 15 Am. Jur. 2d, *Compromise and Settlement* § 9 (2000)). A formal written document is not required because "it has long been the law of this Commonwealth that the fact that a compromise agreement is verbal and not yet reduced to writing does not make it any less binding." *Motorists Ins. Co.*, 996 S.W.2d at 445. Frequently parties settle a case pretrial through verbal exchanges, in person or by phone, through the exchange of letters or emails, or by a combination of the foregoing. Lawyers and judges alike are familiar with settlements "on the courthouse steps," literally settlements reached just before trial starts, or even settlements reached during

13

a trial recess. Often these settlements are not reflected in a formal written document signed by all affected parties but are established by the facts, e.g., the parties' phone calls and emails. To determine if the parties actually reached a settlement agreement courts look to the parties' negotiations. *See, e.g., General Motors Corp. v. Herald*, 833 S.W.2d 804 (Ky. 1992).

The trial court found that Watson's claim against Pure Country "was settled before August 9, 2012," the date five years before the filing of the bad faith claim. The record reflects that Watson made an initial settlement demand for a sum in excess of the USLI policy limits in June 2011 but negotiations did not begin in earnest until a year later, June 2012. In a June 11, 2012 faxed letter Watson's counsel made Pure Country's counsel an "offer to settle the case" in which Watson agreed to release his claims in exchange for the remaining USLI liability policy limits. The offer was to remain open until June 19, 2012. USLI accepted Watson's offer, confirmed in a June 13, 2012 email from Watson's counsel discussing settlement language and medical liens. On July 30, 2012, Pure Country's counsel sent a written release and confirmation of the settlement amount to Watson's counsel. At that point, an agreement existed and, as USLI accurately notes, "the parties stopped litigating."

The foregoing facts support the trial court's finding regarding a binding settlement because the essential elements of an enforceable contract were present no later than July 30, 2012. "The fundamental elements of a valid contract are 'offer and acceptance, full and complete terms, and consideration.'" *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406

14

S.W.3d 828, 834 (Ky. 2013) (citations omitted). The Court of Appeals declined to acknowledge the binding nature of the agreement in July 2012 because it perceived an absence of consideration, i.e., it found that mutual consideration was not present until December 2012 when Watson executed the release and USLI disbursed the settlement funds. This analysis ignores longstanding Kentucky law which holds that mutual promises can, and often do, constitute the necessary consideration;[12] the subsequent exchange of money and signing of a written release is simply the implementation of the agreement previously reached.

Almost 100 years ago, in *Barr v. Gilmour*, 265 S.W. 6 (Ky. 1924), the Commonwealth's then-highest court, the Court of Appeals, addressed the settlement of a malpractice claim arising from dental surgery in which the patient contracted tetanus. After negotiations the patient's husband, her authorized representative, reached an agreement with the dental surgeon to settle the matter for $900 but a dispute ensued when Dr. Barr refused to sign a later-drafted written version of their agreement. The Court reviewed the parties' negotiations in detail and then acknowledged the general principle that mutual promises can support an enforceable settlement even though the parties' agreement is not reduced to writing.

---

[12] *See, e.g., Robbins v. Robbins*, 55 S.W.2d 31, 35 (Ky. 1932) ("It is a universal principle in the law of contracts that mutual promises form a valid consideration for an agreement; but, in order for that to be so, there must be a benefit to the promisor, or a detriment to the promisee."); *Wilson v. Davis*, 8 Ky. 219, 220 (1818) ("Where a contract is subscribed by both parties, and contains mutual covenants, the covenant on one side is the consideration for the covenant on the other.").

15

> The writing was not the compromise but only evidence of it. The compromise was effected when the minds of the parties met, one proposing and the other accepting. The writing was intended only to evidence their agreement and to save further controversy by enabling Dr. Barr to produce a writing showing the compromise had been effected, but the writing was not the compromise, merely evidence of it.

*Id.* at 9.

More recently, in *Energy Home*, 406 S.W.3d at 835, this Court reiterated the concept in the context of an arbitration agreement signed after the purchase of a mobile home.

> The Arbitration Agreement was supported by adequate consideration. Mutual promises constitute adequate consideration if a benefit is conferred to the promisor or a detriment is incurred by the promisee. The manufacturer's promise to cure certain flaws and defects that appear within a given time was fair consideration for the buyers' mutual promise to submit disputes to arbitration. Furthermore, "an arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration."

(Citations omitted.)

Here, Pure Country and Watson reached an agreement no later than July 30, 2012 wherein Watson agreed to release his claims and cease further litigation in exchange for Pure Country tendering its USLI's policy limits minus the defense fees and costs. As the record reflects, the several months delay in the actual issuance of the settlement payment was caused by Watson and his counsel who needed to determine the various medical liens before the settlement checks were written. Nevertheless, the parties' correspondence and conduct clearly evidence that a binding settlement existed no later than July 30, 2012. The Court of Appeals erred in holding otherwise.

16

## II. Watson's UCSPA Claim Is Not Saved by Relation Back to an Earlier Filed or Proposed Pleading

In an effort to establish that his UCSPA claim was filed even before the summer 2012 settlement agreement was reached, Watson pointed the trial court to the relation-back language in Kentucky Rule of Civil Procedure (CR) 15.03. Specifically, he argued his August 9, 2017 amended complaint could relate back to the original complaint in December 2009. The relevant subsections of CR 15.03 state:

> (1) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
>
> (2) An amendment changing the party against whom a claim is asserted relates back if the condition of paragraph (1) is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (a) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

As the trial court properly held, Watson's bad faith claims did not arise out of the same "conduct, transaction or occurrence" at issue in the original complaint, namely the motor vehicle accident and Watson's negligence and dram shop claims against Pure Country and others involved that night. USLI was not even a party as to those original claims, nor was the later untimely UCSPA complaint simply an attempt to change the party against whom the original claims were asserted. CR 15.03 has absolutely no bearing on Watson's

17

UCSPA claim against USLI and the trial court appropriately rejected that argument.

Alternatively, Watson insists that his UCSPA complaint should date back to March/April 2012 when he initially attempted to file it, but Judge Clymer denied his motion. He posits that his complaint should not be deemed untimely when USLI had notice of his claims in early 2012, citing *Hill*, 390 S.W.3d 153.

First, *Hill* is a readily distinguishable case. Hill filed a timely motion for leave to amend her complaint to add her underinsured motorist carrier, State Farm, but the trial court did not grant her motion until after the statute of limitations had expired. *Id.* at 155. The Court of Appeals deemed the amended complaint timely because Hill had done all that was required of her before the limitations period ended, any delay being solely attributable to the trial court's schedule, over which she had no control. *Id.* at 155-56. *Hill* was not premised on a defendant being on notice of a claim but rather on a plaintiff timely filing her amended complaint even though it was not formally approved by the court until after expiration of the limitations period. Here Watson did not timely file his UCSPA complaint against USLI because the August 9, 2017 filing date was at least five years and ten days past the settlement of the underlying claim Watson had against Pure Country.

Focusing on his early 2012 attempt to amend his complaint, Watson characterizes the trial court's later acceptance of the August 9, 2017 amended complaint as a reconsideration of the earlier April 17, 2012 order denying his

18

motion to file an amended complaint to add bad faith claims against the Carriers, including USLI. However, the April 17, 2012 order reflected not only the court's concern about the effect on an upcoming trial date but also a legal conclusion—a correct one—that the first *Wittmer* element of a bad faith claim, the insurance carrier's obligation to pay the claim, was missing. Well over five years later, when the August 9, 2017 amended complaint was tendered, that element was present because USLI became obligated to pay Watson when the parties' settlement agreement was reached no later than July 30, 2012. Unfortunately for Watson his long delay in seeking the court's permission to file the UCSPA complaint rendered the claim untimely. The trial court did not err in rejecting all of Watson's later attempts to reframe the date on which that complaint should be deemed filed.

## CONCLUSION

Five years is a relatively generous limitation period, considerably longer than the limitation periods applicable to most claims. Watson's August 9, 2017 attempt to file an amended complaint asserting bad faith claims against USLI was untimely despite this generous limitation period because the settlement agreement which triggered the five-year period was reached no later than July 30, 2012. Accordingly, we reverse the Court of Appeals and remand to the trial court for reinstatement of the summary judgment in favor of USLI.

All sitting. Minton, C.J.; Conley, Keller, Nickell, and VanMeter, JJ., concur. Lambert, J., dissents by separate opinion.

19

LAMBERT, J., DISSENTING: I would affirm the Court of Appeals and hold that the determinative date for calculation of the statute of limitations was the date of the completion of the contract, i.e., the payment of the consideration. This clear guidepost would also work to prevent litigation as to the moment in time when there is a binding contract arising prior to consideration being paid. With today's crossing emails and phone messages and misdelivered or nondelivered texts, trying to pick an amorphous date from the settlement negotiation season is a bad idea. While it did not happen here, a larger than expected medical lien can, and often does, foul what was thought to be an agreement to settle. As the old adage warns, "There is many a slip 'twixt the cup and the lip." Thus, I would affirm the Court of Appeals.

COUNSEL FOR APPELLANT:

David Domene
Emily Christine Lamb
Blackburn Domene Burchett PLLC


COUNSEL FOR APPELLEE:

Philip Gray Fairbanks

Mendel Austin Mehr

Mehr Fairbanks & Peterson Trial Lawyers, PLLC

David Vance Oakes
Oakes Law Firm